

ENTERED
03/02/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| YEMISI AYOBAMI, | § | CASE NO: 15-35488 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION

This Memorandum Opinion addresses the integration of the newly adopted Schedule C (Official Form 106C) with 11 U.S.C. § 522 and the Supreme Court's opinion in *Schwab v. Reilly,* 560 U.S. 770 (2010). On the specific facts of this case[1], the Court concludes that:

- With certain exceptions set forth below, Ms. Ayobami properly completed Schedule C in accordance with the requirements of Schedule C.

- For the incorrectly completed portions of Schedule C, Ms. Ayobami must amend her scheduled exemptions.

- When the Chapter 13 Trustee (or any other party-in-interest) cannot meaningfully analyze a properly completed Schedule C, discovery may be appropriate.

- If a debtor exempts 100% of the Current Value of an underlying asset, the underlying asset is no longer estate property. Increases in value are attributable to the debtor.

### Background

Ms. Ayobami filed his Chapter 13 bankruptcy petition on October 16, 2015. Along with her petition, she filed many of her schedules and statements. Of particular relevance here, Ms. Ayobami filed her Schedule of Real Property, her Schedule of Personal Property and her Schedule of Property Claimed as Exempt. On October 26, 2015, Ms. Ayobami filed her Schedule of Creditors Holding Secured Claims. All of these schedules were all filed on the appropriate official forms in effect on October 16, 2015.

---

[1] In particular, Ms. Ayobami elected federal exemptions. The Court has not addressed whether a similar result would be dictated for a debtor electing Texas exemptions.

On December 1, 2015, new official forms for use in chapter 13 bankruptcy cases became effective. These new official forms were the product of years of diligent work by the Advisory Committee on Bankruptcy Rules and the Committee on Rules and Procedures.

On December 9, 2015, the Chapter 13 Trustee objected to one item claimed as exempt by Ms. Ayobami. The Trustee alleged that one tract of real property, claimed as exempt under 11 U.S.C. § 522(d)(1), was not Ms. Ayobami's residence.

On December 11, 2015, Ms. Ayobami filed certain amended schedules. The amended schedules included Ms. Ayobami's schedule of Property and an amended schedule of her claimed exemptions. Ms. Ayobami properly utilized the new official forms, including the use of Official Form 106C, to claim her exemptions. On December 29, 2015, also utilizing the new official form, Ms. Ayobami filed an amended schedule of secured claims.

On January 12, 2016, David Peake, the Chapter 13 Trustee, diligently objected to the claimed exemptions. Although Mr. Peake's complaint focused on whether Ms. Ayobami properly completed the new Official Form 106C, the gravamen of the objection was that the Chapter 13 Trustee could not discern what interests in property were actually claimed as exempt.

On January 13, 2016, the Court conducted a hearing on this matter. At the hearing, the Court considered the excellent arguments made both by Ms. Ayobami's counsel and Mr. Peake's counsel. Each client was well represented and presented the Court with difficult issues. At this stage, it is premature to determine whether the claimed exemptions are proper.

### *Schwab v. Reilly*

The new official forms that became effective on December 1, 2015 were adopted in the wake of the Supreme Court's landmark decision in *Schwab v. Reilly*. 560 U.S. 770 (2010). In *Schwab,* the Court was confronted with the issue of whether Nadejda Reilly had exempted 100%

of certain cooking equipment that had been given to Ms. Reilly by her parents. Because the present case turns on the Supreme Court's ruling in *Schwab,* this Court will provide a lengthy explanation of that opinion.

Ms. Reilly elected federal exemptions and claimed certain cookware equipment as exempt under 11 U.S.C. § 522(d)(6) and § 522(d)(5). She claimed that the value of the equipment was $10,718.00. She exempted a $1,850.00 interest as exempt under § 522(d)(6) and she claimed an $8,868.00 interest as exempt under § 522 (d)(5). At the time, the statutory limit for a § 522(d)(6) exemption was $1,850.00 and the statutory limit under § 522(d)(5) was $10,225.00. *Schwab,* 560 U.S. at 775. Accordingly, Ms. Reilly's claimed exemptions were within the statutory limits.

Ms. Reilly listed the value of the cookware equipment at $10,718.00. Accordingly, the amount that she claimed as exempt equaled the amount that she alleged to be the value of the property.

Trustee Schwab did not object to the claimed exemption. The issue before the Supreme Court was whether the claimed $10,718.00 in exemptions, combined with the listed value in the same amount, meant that the cookware equipment had entirely left the estate. The Supreme Court held that the mere fact that the claimed exemption matched the alleged value was insufficient to remove the property from the Estate. Instead, the Court held that the $10,718.00 in value represented Ms. Reilly's exempt interest in the cookware and that any excess would be preserved for the Estate.

Nevertheless, the Court provided extensive instructions on how a debtor could potentially exempt the entirety of an asset. To exempt the entirety of an asset, a debtor was required to "declare the value of her claimed exemption in a manner that makes the scope of the exemption

clear, for example, by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV.'" *Id*. at 793.

The Court continued by explaining that a debtor who did unambiguously declare a claimed exemption of 100% of the fair market value would force action by the Trustee:

> Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits.

*Id.*

The principal issue raised by the Trustee is whether Ms. Ayobami's claimed exemptions have been stated in a manner to allow the Trustee to perform his statutory duties. This, in turn, raises the issue of the rights of the Estate in the interests that are claimed exempt by Ms. Ayobami. The principal economic issue is whether errors or increases in Current Value estimates will devolve to the interests of the Debtor or the Trustee. This Court concludes:

- If a debtor claims an interest in an asset that is measured in dollar value (as did Ms. Reilly in *Schwab*), any increase in value goes to the Estate.

- If a debtor claims an interest that is measured in a percentage ownership of an asset (as Ms. Ayobami did in this case by claiming a 100% interest), any increase in value goes to the debtor.

The foregoing conclusion is inescapably driven by the text of the statute and by *Schwab*.

11 U.S.C. § 522(b)(1) provides that "an individual debtor may exempt from property of the estate . . . " property that is properly claimed as exempt. Put simply, if it is exempted, the property is no longer in the estate, it is "exempt[ed] from property of the estate." Once exempted from the estate, "property exempted under this section is not liable during or after the case for any debt of the debtor that arose" prepetition. 11 U.S.C. § 522(c). This concept is extended to administrative claims by § 522(k). This fundamental principle was recently implemented by the Supreme Court when it held that exempted property could not even be applied to satisfy

administrative claims against the estate that were occasioned by the Debtor's fraud. *Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014) ("The Code authorizes the debtor to "exempt," however, certain kinds of property from the estate, enabling him to retain those assets post-bankruptcy.")

The legal principle that exempt property is no longer estate property was explicitly stated in *Schwab*:

> As we emphasized in *Rousey*, "[t]o help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain *interests in property*, such as his car or home, *up to certain values*." 544 U.S., at 325, 125 S.Ct. 1561 (emphasis added). The Code limits exemptions in this fashion because every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to his creditors.

*Schwab*, 560 U.S. at 791.

This concept was exhaustively analyzed in *Schwab*. Importantly, the concept was the fundamental issue presented in *Schwab*. The holding in *Schwab* was that the debtor had failed to implement her exemption of 100% of the asset; instead, she exempted a dollar value from the estate. However, the Court gave explicit instructions on how Ms. Reilly should have filed her exemptions in order to permanently retain them:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV."

*Schwab*, 560 U.S. at 792-93.

The Court continued and explained what should occur if a debtor claims 100% of the full fair market value:

> If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption.

*Schwab*, 560 U.S. at 793.

Because exempted interests leave the estate, the issue that must be analyzed by the Trustee is the current—not the future—value of the asset. The Trustee wishes to limit the debtor such that the debtor never can receive more than the dollar limit set forth in § 522. It is understandable that the Trustee would want such a result. It would be highly beneficial to the estate, and it would mean that the Trustee would not have to be as concerned with the valuation of property. Under the Trustee's position, many valuation errors could be corrected by simply waiting until assets were sold and the Trustee would receive (as did the trustee in *Schwab*) the excess proceeds.

However, Congress has chosen a different path—one that benefits the debtor rather than the estate. This path presents difficulties for trustee administration, but those difficulties cannot alter the law.

### Application of Official Form 106C

An individual filing bankruptcy in Texas may elect either Texas state exemptions or federal exemptions. In this case, Ms. Ayobami elected federal exemptions. Although Texas law provides for the exemption of *assets*, most federal exemptions are only of all or a part of a debtor's *interest in* the assets. In *Schwab*, the Court clarified that a debtor's interest in an asset—unless explicitly claimed as 100% of the asset—may not encompass the full value of the

asset. However, as set forth above, the Supreme Court specifically authorized a debtor to claim as exempt 100% of the fair market value of an asset.

In *Schwab*, the Court noted that the purpose of valuations on a Schedule C is not to bind the parties to the listed value. Rather, "[w]e simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien." *Schwab*, 560 U.S. at 785.

The exemption of the whole of the asset, rather than merely an interest in the asset, requires diligent disclosure, and diligent conduct by a trustee. "The decision reached here encourages a debtor wishing to exempt an asset's full market value or the asset itself to declare the value of the claimed exemption in a way that makes its scope clear. Such declarations will encourage the trustee to object promptly and preserve for the estate any value in the asset beyond relevant statutory limits." *Schwab*, 560 U.S. at 773.

Official Form 106C, as utilized in this case, does not always accomplish the clarity required by *Schwab*. Nevertheless, the problem is in the disclosure and not in the election to exempt 100% of the fair market value of the assets.

When she completed her Official Form 106, Ms. Ayobami listed assets and their current value[2]. Although there are a few mathematical errors as set forth below, most of the exemption claims are clear. A few items are combined for valuation purposes, which is impermissible if the

---

[2] The Court understands that the term "Current Value" may, in isolation, be ambiguous with respect to whether "Current Value" equates to "Fair Market Value." However, the Official Instructions to the newly adopted forms contain the following instruction: "**In this form, report the current value of the property that you own in each category. Current value is sometimes called fair market value and, for this form, is the fair market value as of the date of the filing of the petition. Current value is how much the property is worth, which may be more or less than when you purchased the property.**" The Court finds that this instruction resolves any ambiguity. A debtor's schedules represent the debtor's sworn statement as to the fair market value of property.

combination exceeds the $575.00 per item limitation. As required by Official Form 106, Ms. Ayobami listed the full Current Value of her property, without deducting the amount of liens from her value estimate. This requires any person reviewing the claimed exemptions to compare the Current Value to the amount of debt secured by the asset. It is only the net value (after deduction of claims secured by the asset) that is exempted. *Owen v. Owen*, 500 U.S. 305, 308 (1991). In a consumer case, the burden of comparing the Current Value of the claimed exemption with the debt secured by that property would ordinarily not be substantial, since most consumers have only a handful of creditors holding secured claims.

The Court will evaluate the claimed exemptions under each of the subsections of § 522.

Under § 522(d)(1), Ms. Ayobami claimed one exemption. She utilized the 100% of fair market value exemption on her real property located at Section 10, Block 1 of Riverpark West. She lists the Current Value of that property at $228,480.00. The exemption that may be claimed under § 522(d)(1) is limited to $22,975.00. However, as set forth above, to determine the Current Value that may be subject to an exemption, the Court must examine the debts secured by the property. Ms. Ayobami's schedule D lists the debt on this property as $2,288.00 owed to Riverpark West HOA and $284,513.14 owed to Caliber Home Loans, Inc. Accordingly, Ms. Ayobami is claiming her bare ownership interest in the home—an interest with no Current Value available to the Estate—as exempt. Even though the property may have no Current Value in excess of the liens against it, Ms. Ayobami may exempt her "bare legal title." *Owen*, 500 U.S. at 308. The Trustee is seeking an order that would give the Trustee the "upside" in any appreciation of the value that produces net sales proceeds above the $22,975.00. By utilizing the 100% value exemption, Ms. Ayobami seeks the same "upside" to be retained by her.

The Trustee is free to challenge Ms. Ayobami's assertion of the Current Value of the Riverpark property. If he fails to do so, then the entirety of the Riverpark property will be exempted from the Estate. The Court gives the Trustee 21 days from entry of this Order to challenge the valuation.

Under § 522(d)(2), Ms. Ayobami exempted her interest in her non-filing spouse's 1999 Nissan Pathfinder. Apparently claiming that the vehicle is not property of the estate, she lists the Nissan's Current Value at $0.00. A debtor may only exempt Estate property (Section 522 provides that "an individual may exempt from property of the estate…"). "No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate." *Owen*, 500 U.S. at 308.

Accordingly, a debtor may not exempt 100% of fair market value of the vehicle because it is not estate property. The present motion is to require the Debtor to amend her exemption claim without utilizing the "100% of fair market value" option. With respect to the claimed exemption of the Nissan, the Trustee has adequate information to file an objection without the necessity of any change in the schedules that were filed. The Court gives the Trustee 21 days from entry of this Order to challenge the claimed exemption.

Under § 522(d)(3), a debtor may exempt up to $575.00 in value in individual items. The aggregate of all § 522(d)(3) exemptions may not exceed $12,250.00. Ms. Ayobami claimed as exempt "100% of the fair market value, up to any applicable statutory limit" the following property as exempt under 11 U.S.C. § 522(d)(3):

| Description | Alleged Current Value |
|---|---|
| Television | $750.00 |
| Couch | $900.00 |
| Two refrigerators | $680.00 |
| Stove and microwave | $950.00 |

| Description | Alleged Current Value |
|---|---|
| Lawn mower | $85.00 |
| Tools | $175.00 |
| Bed | $800.00 |
| Dresser | $100.00 |
| Nightstand | $95.00 |
| Bed | $250.00 |
| Dresser | $150.00 |
| Bed | $250.00 |
| Dresser | $150.00 |
| Bed | $250.00 |
| Dresser | $100.00 |
| Suits and shirts | $1,670.00 |
|  |  |
| Total | $7,355.00 |

The $7,355.00 is less than the allowed aggregate value of $12,250.00 that may be exempted under § 522(d)(3). However, certain of the individual items exceed the $575.00 per item value that may be exempted. These items include the $750.00 television, the $900.00 couch, and the $800.00 bed. The exemption claimed for the refrigerators must be restated as the two refrigerators are aggregated and the Court and Trustee cannot determine whether one of the refrigerators exceeds the $575.00 per item cap. The same is true for the stove and microwave (the debtor has stated that the stove is valued at $400.00 and the microwave at $150.00, but that the total value of the two is $950.00) and for the suits and shirts (listed with individual values totaling $450.00 but with an aggregate value of $1,670.00).

Accordingly, the Court orders that the § 522(d)(3) claimed exemptions be amended to eliminate the aggregation of any claimed exemptions for multiple items if the aggregation results in an aggregate Current Value exceeding $575.00.

The Court notes that on certain items Ms. Ayobami claims a 100% of Fair Market Value exemption under multiple sections of the Code. For example, on her television, she claims 100%

of the Fair Market Value under both § 522(d)(3) and under § 522(d)(5). The Court evaluates these separately, and Ms. Ayobami's schedules must reflect the limits in the Code. Accordingly, although she must amend her § 522(d)(3) exemption claim, she may be able to capture additional exempt value under § 522(d)(5). That will be evaluated below. Or, Ms. Ayobami may wish to claim 100% of the TV's Fair Market Value under § 522(d)(5). The choice is hers, but she may not overlap two 100% exemptions such that they may not be meaningfully evaluated[3].

The claimed exemptions of the $750.00 television, the $900.00 couch and the $800.00 bed are limited to $575.00 per item. The Trustee's objection to the use of the 100% of Fair Market Value option is sustained. Ms. Ayobami is ordered to amend her claimed exemptions to eliminate the claim that she may exempt 100% of the Fair Market Value of any individual asset with a value exceeding $575.00. This excess value must be made available to pay the holders of unsecured claims under the "best interest test" contained in 11 U.S.C. § 1325(a)(4).

With respect to the balance of the § 522(d)(3) property, the Trustee is entitled to object to the valuation of the property. He may engage in formal or informal discovery if the information is inadequate. However, no further amendments by the Debtor are required. Ms. Ayobami has properly claimed the exemption. The Court gives the Trustee 30 days from entry of this Order to challenge the valuations of this property.[4]

---

[3] For example, Ms. Ayobami may exempt $575.00 in value of the $750.00 television as exempt under § 522(d)(3). She may then exempt 100% of the balance of the value of the television under § 522(d)(5) if she has available value under § 522(d)(5). In that instance, if no party-in-interest objects, she would have used $175.00 of her available § 522(d)(5) value, but exempted 100% of the television.

[4] The Court has no concern that this requirement will impose undue hardship on the Trustee or on debtors. Time and again, the Trustee has proven his diligence and good judgment. Debtor's counsel in this case and throughout the District have demonstrated their full-throated defense of their clients. The adversarial process established by Congress is alive and well in this District. In a routine case, the Trustee is likely to request photographs of assets to assist in his valuation. Most debtors with assets that may prove valuable also have ready access to smart phones with high quality cameras. The Court is confident that debtors, informed by highly capable counsel, will readily cooperate with the Trustee. If not, the Trustee may engage in compelled discovery. Fed. R. Bankr. P. 2004. If photographs prove inadequate to allow the Trustee to evaluate valuations, he has a panoply of available discovery tools at his disposal. Indeed, non-cooperation with the Trustee in the performance of his duties may raise questions

Under § 522(d)(5), a debtor may exempt up to $1,225.00 in aggregate exemptions. Additionally, the Debtor may increase this aggregate by the amount by which the debtor's § 522(d)(1) exemptions are less than $11,500.00. Because Ms. If Ms. Ayobami's allegation that her § 522(d)(1) exemptions are worth $0.00 (net of secured debt), she may claim up to $12,725.00 in § 522(d)(5) exemptions. Ms. Ayobami claimed as exempt "100% of the fair market value, up to any applicable statutory limit" the following property as exempt under 11 U.S.C. § 522(d)(5):

| Description | Alleged Current Value | Alleged Secured Debt | Alleged Value of Claimed Exemption |
|---|---|---|---|
| Real property at Lexington Place Sec 1, Block 1 | $179,560.00 | $158,724.00 | $20,836.00 |
| 2011 Chevrolet Tahoe | $19,000.00 | $20,162.00 | $0.00 |
| TV | $750.00 | $0.00 | $750.00 |
| Couch | $900.00 | $0.00 | $900.00 |
| Refrigerator | $680.00 | $0.00 | $680.00 |
| Bed | $800.00 | $0.00 | $800.00 |
| | | | |
| Total | | | $23,966.00 |

Accordingly, Ms. Ayobami has attempted to claim § 522(d)(5) exemptions on $23,966.00 of interests in property when her maximum allowed exemption is $12,275.00[5]. That is

---

as to whether the debtor's chapter 13 plan has been proposed in good faith. 11 U.S.C. § 1325(a)(3). Because the duty of cooperation is statutory ("The debtor shall . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3)), the debtor's cooperation could also be compelled by the Court without the need for resort to formal discovery.

[5] It is important to note that valuation is concluded at the time that the exemptions are allowed. A debtor may not exempt an asset if its Current Value exceeds the statutory exemption limit. Nevertheless, if there is a valuation error, a debtor could potentially gain a windfall. For example, Ms. Ayobami valued her Chevrolet Tahoe at

impermissible. The Trustee's objection is sustained. It is not possible to determine whether Ms. Ayobami wishes to claim a $12,275.00 interest in the real property, and to waive the balance of her exemption claim under § 522(d)(5), or to utilize a different mix of assets. What is apparent is that the current claimed exemptions exceed her own estimate of the Current Value. Accordingly, Ms. Ayobami must amend her claimed exemptions under § 522(d)(5) to conform to the statutory maximum.

### Two Clarifications from Oral Argument

Two matters arose at oral argument reflecting the confusion raised by the transition to the new Official Form 106C.

First, Ms. Ayobami's counsel misinterprets the phrase "100% of fair market value, up to any applicable statutory limit" to mean that the selection of that option on Form 106C creates a floating exemption that is "capped" by the statutory limit. That is not correct. Once 100% of the property is exempted, it is withdrawn from the estate. After withdrawal from the estate, there is no longer a ceiling on the value of the asset. Instead, the language "up to any applicable statutory limit" means that a debtor may claim 100% of the fair market value *only if* the fair market value at the time that the exemptions are allowed is less than the applicable statutory limit. Value estimates may be incorrect, but they will nevertheless bind the outcome.

Second, the Trustee's counsel lamented the need to continue to monitor each asset sale during the five-year bankruptcy case so as to adjust the allowed exemptions in the remaining assets. That concern is not well-founded. If the debtor has exempted as asset, the asset is removed from the estate. The risk on an estimation error rests on all parties. If the valuation overstates the value of the asset, the debtor will receive less and may not redo the exemptions at

---

$19,000.00 and exempted 100% of the Tahoe. If the Tahoe is ultimately sold for $25,000.00, Ms. Ayobami would be entitled to retain the amount of the sales proceeds that exceed the debt secured by the Tahoe.

a later date based on the valuation error. If the valuation understates the value of the asset, the debtor will receive an amount that exceeds the valuation, and may receive more than the statutory limit.

The statutory limit in a 100% of fair market value scenario is not a limit on distributions that may be received years in the future. Rather, it is a limit on whether 100% of the fair market value of an asset may be exempted at all.

## Conclusion

Ms. Ayobami may not claim exemptions that exceed the statutory maximum fair market value of the allowed exemptions under § 522. Her schedules must clearly claim an exemption, and the claim must be consistent with the statute.

Although the Trustee will be required to assert his objections in a timely manner, he will not be required to guess at what Ms. Ayobami wants to do. That is precisely what occurred in *Schwab,* and the debtor in that case was not allowed to benefit from her own ambiguity.

The Court orders Ms. Ayobami to amend her schedules in a manner consistent with this Memorandum Opinion with respect to her § 522(d)(3) and § 522(d)(5) exemptions. The amendments must be filed within 21 days of entry of this Memorandum Opinion. The Trustee and other parties in interest may object within 30 days of the filing of the amendments.

With respect to the § 522(d)(1) and § 522 (d)(2) exemptions, the Trustee has 21 days from entry of this Memorandum Opinion to object.

SIGNED **March 1, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE