

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
07/05/2016

| | | |
|---|---|---|
| IN RE: | § | |
| YEMISI AYOBAMI; aka AREGBE | § | CASE NO: 15-35488 |
| Debtor. | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION IN SUPPORT OF
## <u>CERTIFICATION OF A DIRECT APPEAL TO THE COURT OF APPEALS</u>

This Memorandum Opinion is issued in support of a Certification of a Direct Appeal to the United States Court of Appeals for the Fifth Circuit.

### Statutory and Rule Authority

This certification is made pursuant to 28 U.S.C. § 158(d)(2). It is governed by Fed. R. Bankr. P. 8006.

### Facts and Law Establishing this Court's Authority

Pursuant to Rule 8006(b), the matter that is the subject of a direct appeal is "pending" in the Bankruptcy Court for 30 days after the effective date under Rule 8002 of the first notice of appeal of the order for which direct review is sought. The timing of events is:

| Date | Event |
|---|---|
| June 9, 2016 | Court issues Supplemental Memorandum Opinion (ECF No. 100) and Order (ECF No. 101). |
| June 23, 2016 | Chapter 13 Trustee files a notice of appeal. The notice is timely under Fed. R. Bankr. P. 8002(a)(1). June 23, 2016 is the "effective date" of the notice of appeal under Rule 8002(a). |
| June 24, 2016 | Chapter 13 Trustee files a request for certification of a direct appeal. The request indicates that it is "agreed" by the debtor. |
| July 1, 2016 | This Certification is issued. This Certification is timely under Fed. R. Bankr. P. 8006(b). |
| July 23, 2016 | Last day in which the matter would be "pending" in the bankruptcy court, thus allowing the certification by this Court through July 23, 2016. Fed. R. Bankr. P. 8006(b). |

Based on the preceding table, the Court concludes that this matter remains "pending" in the Bankruptcy Court for the purposes of Rule 8006(b).

## Information Required by Fed. R. Bankr. P. 8006(f)(2)(A)-(D)

Bankruptcy Rule 8006(e)(1) requires this Court to include the information required by Rule 8006(f)(2)(A)-(D).   This information includes the facts necessary to understand the question presented on appeal, the question presented on appeal, the relief sought, and the reasons for the certification.

### The Facts Necessary to Understand the Question Presented (Rule 8006(f)(2)(A)).

On June 17, 2010, the United States Supreme Court clarified the law on exemptions that may be claimed by an individual debtor under § 522 of the Bankruptcy Code.  *Schwab v. Reilly*, 560 U.S. 770 (2010).  Among other things, *Schwab* instructed debtors on how to claim a 100% interest in the fair market value of an asset.

A debtor asserts her claimed exemptions by completing an official bankruptcy form.  The current form is Official Form 106, which is entitled "Schedule C: The Property You Claim as Exempt."  At the time that *Schwab* was issued, "Schedule C" was Official Form 6C.

As a result of *Schwab,* Form 6C was amended to provide additional options for a debtor's choice of exempt property.   The new form (Official Form 106) allows a debtor to specify that the debtor is claiming "100% of Fair Market Value" as allowed by *Schwab.*  The amended form became effective December 1, 2015.

In this case, Ms. Ayobami utilized the 100% of fair market value option allowed by *Schwab* and by the new Official Form 106. The Chapter 13 Trustee, David Peake, timely objected.   Ms. Ayobami amended her Official Form 106, and the Trustee filed amended

objections.  The Court ultimately overruled the objections and allowed the amended exemptions as set forth in Ms. Ayobami's amended Official Form 106.

**The Question Itself (Rule 8006(f)(2)(B)).**

*"May a debtor claiming federal exemptions under § 522 of the Bankruptcy Code ever exempt a 100% interest in an asset?"*

In Texas, a debtor may elect to claim her exempt property utilizing either a federal or state exemption scheme.[1]  If a debtor elects to utilize federal exemptions, § 522 generally establishes limits on the value of the interest in property that a debtor may claim as exempt.  For example, § 522(d)(2) authorizes a debtor to exempt the "debtor's interest, not to exceed $3,450[2] in value, in one motor vehicle."  11 U.S.C. § 522(d)(2).  Moreover, while Texas law allows the vehicle itself to be exempted, federal law allows the debtor's "interest" in the vehicle to be exempted.

The Chapter 13 Trustee generally alleges that a debtor may never exempt a 100% interest in an asset.  It is the Trustee's position that the purpose of the new Official Form 106 is to place a trustee on notice that a debtor is claiming 100% of the interest in the asset, and that such a claim is facially objectionable.

Ms. Ayobami alleges, and this Court has held, that *Schwab* explicitly authorizes a debtor to exempt 100% of the interest in the asset.  Accordingly, a claim of a 100% interest in the fair market value of an asset is *not* per se objectionable.[3]

---

[1]  The statute allows states to "opt-out" of the federal exemption scheme.  11 U.S.C. § 522(b)(2). Texas has not opted-out.

[2]  It is undisputed that the applicable values represent the debtor's equity in an asset.  For example, a car valued at $20,000.00 with a $19,000.00 lien would have only a $1,000.00 value to the debtor.

[3]  Of course, a debtor may not exempt a 100% interest in the fair market value of an asset if that 100% interest exceeds the statutory limit.

The reason for the dispute generally concerns uncertainty of the amount that will ultimately be realized from an asset. The Chapter 13 Trustee wants valuation errors (or increases in value) to inure to the benefit of creditors. He can only accomplish that goal if the debtor is unable to exempt 100% of the interest in an asset. If the debtor is allowed to exempt 100% of the interest in an asset, the asset leaves the bankruptcy estate and value changes would inure to the debtor's benefit or detriment.

**The Relief Sought (Rule 8006(f)(2)(C)).**

The Trustee seeks to reverse the allowance of Ms. Ayobami's claimed exempt property in each instance in which she elected to exempt 100% of the fair market value of the interests in the asset.

**The Reasons Why a Direct Appeal Should be Allowed (Rule 8006(f)(2)(D)).**

A brief overview of events occurring within this district is appropriate. Multiple debtors have utilized the new Official Form 106 to assert a 100% of fair market value exemption of their assets. In turn, multiple objections have been filed by Trustee Peake. Although the precise number of disputes that have arisen is not known, it is fair to estimate that between 35 and 50 cases have a virtually identical dispute. These cases are pending before Chief Judge Jones and Judges Bohm and Isgur. Most of the exemption disputes in those 35-50 cases are being abated pending the outcome of this appeal. Indeed, Chief Judge Jones's abatement order states that "[a]ll parties will benefit from a consistent interpretation" of Official Form 106. New cases are being filed monthly that will cause the number of abated cases to increase. A Circuit Court ruling is requested. Indeed, this Court urges the Circuit Court to consider this appeal on an expedited basis to alleviate these concerns.

With that background, Rule 8006(f)(2)(D) requires an examination of the factors set forth in 28 U.S.C. § 158(d)(2)(A)(i)(-(iii).

The issue under § 158(d)(2)(A)(i) is whether this Court's order involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or whether the order involves a matter of public importance. The present decision is controlled by *Schwab*.[4]  Nevertheless, the number of cases in which the Chapter 13 Trustee reads *Schwab* differently than the Court raises this matter to one of public importance.  Certification is appropriate under this subsection.

The issue under § 158(d)(2)(A)(ii) is whether the case involves the resolution of conflicting decisions.  As cited by this Court in its Supplemental Memorandum Opinion that is the subject of this appeal, a contrary decision was issued by the United States Bankruptcy Court of the Northern District of Texas.  *In re Salazar,* 449 B.R. 890 (Bankr. N.D. Tex. 2011).  An earlier decision by the Northern District of Texas is largely consistent with this Court's decision. *In re Moore,* 442 B.R. 865 (Bankr. N.D. Tex. 2010).  *Moore* and *Salazar* were each issued after *Schwab,* but before the new Official Form 106.  Because there are conflicting decisions, even within this Circuit, the Court finds that certification is appropriate under this subsection.

The issue under § 158(d)(2)(A)(iii) is whether an immediate appeal would materially advance the progress of this case.  This Court does not believe that an immediate appeal would alter or advance the outcome of the present case.  Ms. Ayobami may obtain confirmation of her five-year plan in reliance on this Court's order.  Certification is not justified by this subsection.

---

[4] Although the Court sees no footing for the Trustee in *Schwab,* there is room for disagreement concerning the language in Official Form 106.  The 100% of fair market value election in the form reads "100% of fair market value, up to any applicable statutory limit."  The form must be read in the context of *Schwab* (and, of course, the form cannot contradict *Schwab*).  The Trustee reads the statutory limit as a permanent limit on what could ultimately be derived from an asset with changing value; the Court reads the statutory limit to restrict the fair market value as of the petition date.  The Court does not question the sincerity of the Trustee's argument, or the diligence with which he is pursuing this issue.

## Copies of Order and Memoranda

Attached as Exhibit "A" is the Court's Supplemental Memorandum Opinion.

Attached as Exhibit "B" is the Court's original Memorandum Opinion.

Attached as Exhibit "C" is the Court's Order.

## Separate Certification

As required by Fed. R. Bankr. P. 8006(f)(5), a separate document contains this Court's certification.  Service on the parties under Rule 8003(c)(1) will occur upon the entry of the certification and this Memorandum Opinion on the docket.

SIGNED **July 1, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT "A"



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/09/2016

IN RE:                              §
YEMISI AYOBAMI,                     §
    Debtor.                        §          **CASE NO: 15-35488**
                                   §
                                   §          **CHAPTER 13**

## SUPPLEMENTAL MEMORANDUM OPINION

The Court issues this Supplemental Memorandum Opinion to address the issues raised in

Chapter 13 Trustee David Peake's motion requesting clarification of the Court's Memorandum

Opinion issued on March 1, 2016.  (ECF No. 73 and 76).

In the March 1 Memorandum Opinion, among other things, the Court concluded:

- If a debtor claims an interest in an asset that is measured in dollar
  value (as did Ms. Reilly in *Schwab*), any increase in value goes to
  the Estate.

- If a debtor claims an interest that is measured in a percentage
  ownership of an asset (as Ms. Ayobami did in this case by
  claiming a 100% interest), any increase in value goes to the debtor.

(ECF No. 73 at 4).  The Court further concluded that this result was "inescapably driven by the

text of the statue and by *Schwab* [*v. Reilly*, 560 U.S. 770 (2010)]." (*Id.*).

### Background

On March 28, 2016, a hearing was held on Mr. Peake's motion to clarify.  At the hearing,

Mr. Peake urged the Court to reconsider its interpretation of *Schwab*.  In its March 1

Memorandum Opinion, this Court determined that *Schwab*, in conjunction with the text of 11

U.S.C. § 522, allowed a debtor the option of exempting an interest in an asset from the estate,

without respect to future changes in the value of that interest.  Before *Schwab*, some believed

that under a dollar-limited-exemption statute a debtor was only able to exempt a fixed monetary

interest in an asset.  However, the Supreme Court in *Schwab* indicated that a debtor may be able

to exempt her entire interest in an asset—even under a dollar-limited-exemption statute. The Supreme Court offered language that debtors could use to indicate an intention to exempt a 100% interest in the asset. The exemption explained by the Supreme Court is distinct from a fixed monetary interest primarily because it would allow post-petition fluctuation in value.

The relevant language of *Schwab* upon which this Court based its conclusion is reproduced below:

> Where, as here, it is important to the debtor to exempt the full market value of the asset *or the asset itself*, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV." Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or if it the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption.

*Schwab*, 560 U.S. at 792-93 (emphasis added).

In a footnote, the Supreme Court recognized that a debtor's ability to exempt the property itself (as opposed to an interest in property) may not be available under the Code. In response to Reilly's argument that "once the thirty-day deadline passed without objection she was entitled to know that she would emerge from bankruptcy with her cooking equipment intact[,]" the Court stated:

> [H]er argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment's full value. That assumption is at least questionable. Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and §§ 522(d)(5) and (6) are equally clear that her

> reclamation right is limited to exempting an interest in the
> equipment, not the equipment itself. Accordingly, it is far from
> obvious that the Code would entitle Reilly to clear title in the
> equipment even if she claimed as exempt a 'full' or '100%'
> interest in it (which she did not). Of course, it is likely that a
> trustee who fails to object to such a claim would have little
> incentive to do anything but pass title in the asset to the debtor.

*Id.* at 794 n. 21[1].

Although some of the implications of *Schwab* to Ms. Ayobami's case are derived from

dicta, the Court is bound by Supreme Court dicta "almost as firmly as by the Court's outright

holdings . . . ." *Gaylor v. U.S.*, 74 F.3d 214, 217 (10th Cir. 1996); *see also Official Comm. of*

*Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548,

562 (3d Cir. 2003) ("[w]e should not idly ignore considered statements the Supreme Court

makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it

cannot decide because of its limited docket."). The fact that some of the dicta in *Schwab* that

bears materially on the present case is stated in a footnote does not diminish its significance.

*Phillips v. Osborne*, 444 F.2d 778, 782 (9th Cir. 1971) (dismissing a party's attempt to diminish

the significance of a footnote, stating "[w]e think that the location, whether in the text or in a

footnote, of something which the writer of an opinion thinks should be sai[d], is a matter of style

which must be left to the writer.").

---

[1] A Chapter 7 trustee, for example, may elect to utilize his legal title to sell the asset in order to pay debt that is secured by the asset. With exceptions not relevant here, a debtor's exemption of an interest in an asset is subject to the rights of secured creditors. Although a Chapter 7 trustee might ordinarily abandon an asset where the value is held either by the secured creditor (via a lien) or the debtor (via an exemption), the Court imagines a scenario with cross-collateralized debt where repayment of the cross-collateralized lien would inure to the estate's benefit by allowing the disposition of on an asset which is not the subject of an exemption claim. In a chapter 13 context, this situation would not arise. The debtor is burdened with an obligation to pay holders of claims at least the amount that they would receive in a chapter 7 case. 11 U.S.C. § 1325(a)(4).

**Analysis**

**I.    Treatment of exemptions post-*Schwab***

The Court will address three opinions interpreting *Schwab* and its effect on debtors attempting to exempt more than a fixed monetary interest in an asset.

    **a.    *In re Orton*, 685 F.3d 612 (3d Cir. 2012).**

The Third Circuit addressed whether a debtor, who exempted a 1/8 interest in a piece of real estate subject to an oil and gas lease (but with no well drilled) with a value within the §522(d)(5) limit, was entitled to the "benefits and risks of future ap- or depreciation, free from any creditors' claims." *In re Orton*, 687 F.3d 612, 614 (3d Cir. 2012). Orton, the debtor, contended that he was entitled to any future appreciation in the lease's value which may arise from the discovery of oil and gas and the drilling of a well. *Id.* It is important to note that Orton failed to follow *Schwab's* instruction to indicate his intent to exempt "'full fair market value (FMV)' or '100% of FMV.'"

Orton argued that because he *accurately* valued his interest in the property and lease (something Reilly in *Schwab* failed to do), it was of no consequence that he failed to indicate his intention to exempt 100% FMV. The court did not agree with Orton's attempts to distinguish his case from *Schwab* and ultimately held that Orton was limited to the dollar value he claimed as exempt, not the full market value of the real estate and lease. *Id.* at 618. Furthermore, the court held that any appreciation in the asset's value beyond the monetary interest exempted would devolve to the estate.

The actual holding of *Orton* has limited value with respect to the issue before the Court because Orton failed to follow *Schwab's* explicit instructions. However, dicta in *Orton* bears substantially on the issues faced by the Court.

First, the court in *Orton* stated that "[t]he rationale in *Schwab* focused on concerns about placing trustees on notice, not concerns about inaccurate debtor valuations." *Id.* at 617. This "notice purpose only" sentiment is one echoed by the chapter 13 trustee in this case, and the Court will address it in further detail in Section II of this Supplemental Memorandum Opinion.

Second, the court addressed the footnote in *Schwab* and its apparent inconsistency with the body of the opinion. The court concluded that, "[a]t the very least, the [Supreme Court] was clear that exemptions under § 522(d)(5) are presumed to preserve a debtor's 'interest' in an asset rather than the asset itself; a debtor seeking to retain more than an 'interest' must indicate that fact unambiguously in the Schedules." *Id.* at 617-18.

### b.  *In re Massey*, 465 B.R. 720 (B.A.P. 1st Cir. 2012)

In 2012, the First Circuit Bankruptcy Appellate Panel conducted a survey of post-*Schwab* cases in an attempt to resolve the uncertainties created by *Schwab*. The court concluded, "[e]ven if we accept the premise that the import of *Schwab* remains unclear, one thing is certain: most, if not all courts which have specifically addressed exemptions of '100% of FMV' in the wake of *Schwab* have found such exemptions impermissible. No court has interpreted the Supreme Court's holding as either unfettered authorization for debtors to exempt assets in-kind, or as a mandate for courts to allow such exemptions." *In re Massey*, 465 B.R. 720, 727 (B.A.P. 1st Cir. 2012).

In *Massey*, joint debtors claimed exempt a jointly owned residence valued at $92,000.00 and a jointly owned vehicle valued at $1,455.00. The debtors' Schedule C indicated that the amount of their claimed exemptions in both the residence and the vehicle was "100% of FMV," pursuant to § 522(d). The Masseys did not assign a dollar value to their interest. The bankruptcy court sustained the chapter 13 trustee's objection to the debtors' exemption of 100% of FMV in the residence and vehicle. The Masseys appealed this aspect of the bankruptcy court's ruling.

The thrust of the Masseys' argument that the bankruptcy court erred in sustaining the trustee's objection can best be summarized as follows:

> The [Supreme] Court [in *Schwab*] is *not* saying that a debtor can't keep assets subject to a capped exemption. It is saying instead that the Code does not give the debtor the right to exempt property in-kind if the property's value exceeds the cap. The Bankruptcy Judge misinterpreted the distinction as implying the former, and that was error.

*Id.* at 724. The Trustee argued that the Masseys' claimed exemptions were facially defective because they failed to claim a specific dollar amount under §§ 522(d)(1)-(2), and that the exemption in the residence exceeded the statutory limit. *Id.*

The *Massey* court held that an exemption of "100% of FMV" is facially invalid. *Id.* at 729. The court indicated that it would sustain such an objection unless the debtor amended the exemption to claim a dollar amount for his exempt interest in the property—an approach recommended by our sister Texas bankruptcy court in *In re Salazar*, 449 B.R. 890, 897-98 (Bankr. N.D. Tex. 2011). *See also In re Luckham*, 464 B.R. 67, 77 (Bankr. D. Mass. 2012) ("where the statutory basis for a debtor's claim of exemption provides only for an exemption of an interest in certain property up to a specific dollar amount, the 'value of claimed exemption' must be identified as a monetary value. Nothing in *Schwab* . . . dictates otherwise . . . .").

The debtors in *Massey* failed to assign a dollar value to their claimed exemption.[2]   All of Ms. Ayobami's amended exemptions list a dollar value within the statutory limits. Consequently, the Court is faced with a different issue than the courts in *Massey* and *Orton*: whether a debtor is able exempt a 100% interest in an asset if (1) the debtor follows the *Schwab* "100% of FMV" instructions and (2) the exempt interest has a dollar value, disclosed on the schedules, that is within the statutory limits.

---

[2] To the extent that this distinction does not matter, the Court rejects *Massey*.

### c.  *In re Salazar*, 449 B.R. 890 (Bankr. N.D. Tex. 2011).

In 2011, a bankruptcy court from this Circuit was presented with a case very similar to the present case.  In *In re Salazar*, the court consolidated several cases with similar issues.  In three of the consolidated cases, Chapter 13 debtors electing to take federal exemptions indicated "an actual dollar amount for the value of each of their claimed exemptions in addition to the '100% of FMV' claim." *In re Salazar*, 449 B.R. 890, 893 (Bankr. N.D. Tex. 2011).

In *Salazar*, the trustee objected to the debtors claimed exemptions, and the court was faced with the question of how to proceed.  The court outlined at least two possible methods of dealing with an objection to a "100% of FMV" exemption.  The first method, set forth by a bankruptcy court in *In re Moore*, 442 B.R. 865, 868 (Bankr. N.D. Tex. 2010), required the court to conduct an evidentiary hearing on the objection where "the debtor has the burden of going forward to establish at least a plausible basis for a claim that '100% of FMV' of an asset falls within the statutory limit . . . ." *In re Salazar*, 449 B.R. at 897.  The trustee would then have the burden to prove that the claimed exemption exceeded the statutory limit.  If the trustee failed to meet its burden, the objection would be overruled and the "asset claimed will no longer be part of the estate." *Id.*; *In re Moore*, 442 B.R. at 868.  The *Salazar* court did not follow this approach, and further disputed the *Moore* conclusion that the asset would leave the estate.

The second method, and the approach adopted by the court in *Salazar*, involves the Court simply declaring an objection to a "100% of FMV" claim of exemption to be a facially valid objection.  The court then would sustain the objection unless the debtor amended his exemption to claim "a dollar amount for his exempt interest in the property." *Id.* at 897.  This Court finds no support for this approach in the statute.

Because the debtors' exemptions were limited to an *interest* in the property, not the property itself, the *Salazar* court concluded that a valuation hearing was unnecessary. "The value of the property itself is relevant only to the extent that there is sufficient value to support the amount of the exemptible interest." *Id.* at 898. If the trustee does not object, the "100% of FMV" exemption claim stands. However, the *Salazar* court made clear that the exemption claim is "still limited to his interest in the property[]" because "title to the property does not pass to the debtor even if no objection is filed." *Id.* at 900; *Schwab*, 560 U.S. at 794 n. 21.

In addition to setting forth the above analytical framework, the *Salazar* court also addressed how post-petition appreciation in value would affect a debtor's "100% of FMV" exemption claim. The court cited the Ninth Circuit's opinion in *In re Gebhart*, for the proposition that a debtor is not entitled to post-petition appreciation on their exempt interest. *Id.* at 901. This Court will analyze *Gebhart* in further detail below, but at this juncture an important distinction is apparent. In *Gebhart*, the debtors failed to make an exemption claim of "100% of FMV" and were consequently limited to the fixed dollar amount they claimed exempt. *In re Gebhart*, 621 F.3d 1206, 1208 (9th Cir. 2010). In light of *Gebhart*, the *Salazar* court concluded:

> Accordingly, if the trustee wishes to preserve for the estate any excess value—value over the amount of the statutory limit that may exist either at the time the exemption is claimed, as was the case in *Schwab*, or any excess value that may exist as a result of anticipated appreciation in the property, as happened in *Gebhart*— the trustee must object to the exemption claim itself.

*In re Salazar*, 449 B.R. at 900. To avoid confusion, the *Salazar* court stated, "to be clear, in the unlikely event that an asset, an interest of which has been exempted by the debtor, appreciates in value to the point it exceeds the statutory limit, the trustee will still hold title to such asset." *Id.* at 901. Implicit in this concluding remark is the assumption that if an asset appreciates, the holder of 100% interest in that asset (the debtor, as (now) exempt property) is not entitled to the benefit

of such appreciation.   As discussed in detail in Section III, the Court disagrees with that assumption.

**II.    Use of the *Schwab* language accomplishes more than notice.**

At the hearing on March 28, 2016, in response to the Court's statement that " . . . [*Schwab*] says, the Trustee can object if the value of the asset exceeds the fair market value of the allowed exemption" Mr. Peake argued, "[w]hat I really think [*Schwab*] says, is that if you put the Trustee on notice that that's what you're trying to do, the Trustee can object and then limit your exemption to the monetary amounts provided by Congress and the statute." (ECF No. 89 at 35).   When asked about the meaning of the "100% of FMV" language that the Supreme Court recommended Reilly use in *Schwab*, Mr. Peake argued "that's just a notice mechanism."   (ECF No. 89 at 9).

In *Williams v. Biesiada*, our own district court found that the *Schwab* language served an important notice purpose.   In *Williams*, the debtor claimed a lawsuit as exempt property, but indicated his interest in exempting "Full Fair Market Value" in the description of property column of Schedule C, not in the correct column entitled "value of claimed exemption." Because of this error, the court held that the trustee did not have sufficient notice, and therefore did not waive the estate's interest in the lawsuit by failing to object.   498 B.R. 746, 754 (S.D. Tex. 2013). *Williams* falls squarely within both *Schwab* and the holding in this opinion.

The Supreme Court's statement in *Schwab* that a debtor using the "100% of FMV" language would "encourage the trustee to object promptly" suggests it serves *some* notice purpose, but inserting the "100% of FMV" language is not *solely* for notice purposes. The Court questions why the Supreme Court would recommend an approach that—if precisely followed by

a debtor—would always be facially rejected.  Surely the Supreme Court would not have adopted a practice that was fatally objectionable and flawed.

The "100 of FMV" language has an independent legal effect.  The Supreme Court offered the "100% of FMV" language as an alternative to a debtor who did not wish to exempt a mere interest worth a specified dollar amount.  *Compare Schwab* 560 U.S. at 792 ("where a debtor intends to exempt nothing more than an interest worth a specified dollar amount in an asset"), *with id.* at 792 ("where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself.").  The Court contemplated a distinct type of exemption, identified by using the "100% of FMV" language, which both notifies the trustee of the debtor's intent, and defines the scope of the claimed exemption.  The language is necessary to distinguish the *Schwab* exemption from "an interest worth a specified dollar amount in an asset." *Id.* at 792.

Perhaps the "100% of FMV" exemption can be best conceptualized as an exemption of an equity interest.[3]  Conversely, omitting the "100% of FMV" language results in removing from the estate a fixed monetary interest in the asset, much like a lien.

The Supreme Court in *Schwab* did not consider it a foregone conclusion that a trustee's objection to a debtor's attempt to effectuate a "100% of FMV" exemption of an interest valued within the statutory limit would automatically be sustained.  Indeed, the Court contemplated the effect of the language if the objection was overruled: the debtor would be "entitled to exclude the

---

[3] The question of whether a debtor may exempt an "equity" interest of less than 100% in lieu of a monetary interest in the *value* of the asset is not before the Court.  Nevertheless, consider the exemption possibilities for a rare coin owned by the debtor with a fair market value of $10,000.00.  Theoretically, under § 522(d)(5) a debtor could exempt a 10% interest in the coin—and thus exempt an interest with a fair market value of $1,000.00.  Alternatively, a debtor could exempt a $1,000.00 monetary interest in the *value* of the coin.  As of the date of exemption, they are functionally identical, but if the coin changes in value post-exemption, the debtor's equity interest in the coin—which was removed from the estate—is subject to fluctuations in the rare coin market.  Fluctuation in value of the debtor's equity interest can work to the debtor's benefit or detriment.  If the coin depreciates, the value of the debtor's equity interest depreciates (and he would have squandered valuable exemption space that could have been used for another asset).  Conversely, if the coin appreciates, the value of the debtor's equity interest appreciates.  Because the debtor's equity interest was removed from the estate, any appreciation in value of that interest is similarly removed from the estate.  Had the debtor opted only to exempt a $1,000.00 monetary interest in the asset, the value of his exemption would be unaffected by post-exemption value fluctuations.

full value of the asset." *Id.* at 793.  The Court fully understood the exemptions offered by the Code, and it did not offer an alternative that would contravene § 522.  It simply determined that in some cases, the value of 100% of the interest in an asset as of the petition date would be within the statutory limits.  Under such circumstances, the debtor would be entitled to exempt the "full value of the asset."

The text of the Code underscores this result.  As an example, § 522(d)(5) allows a debtor to exempt "[t]he debtor's aggregate *interest* in any property, not to exceed in *value* $1,225 . . . ."  In § 522(d)(4) a debtor may exempt his "aggregate *interest*, not to exceed $1,550 in *value*, in jewelry . . . ."  11 U.S.C. § 522 (emphasis added).  These examples illustrate that it is the debtor's *interest* to which Code offers exemption.  It is true that the value of the interest as of the petition date may not exceed the fixed dollar amount in the statute.  But it is the interest, not the value, that is exempted.

### III.     Post-petition appreciation in value of an exempt interest in an asset devolves to the debtor.

If a debtor exempts her interest[4] in an asset as 100% of FMV and values his interest within the applicable statutory limit, and that claimed exemption is unopposed (or all objections are overruled), 100% of the interest in the asset is *removed* from the estate.  *Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) ("To help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain interests in property") (emphasis added).  Bare title to the asset may remain with the estate, but 100% of the interest in that asset is withdrawn.  If the asset then appreciates, who benefits from the appreciation?  The Court finds it plain that it is the debtor who receives the benefit.

---

[4] Of course, some state statutes (e.g., Tex. Prop. Code § 41.001) allow for an exemption of the asset itself.  This opinion does not address the effect of a state exemption statute that provides for the exemption of an asset.

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
| --- | --- | --- | --- |
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption* | |
| Brief description: Riverpark West Sec 10, BLOCK 1, Lot 7 Line from *Schedule A/B*: __1.1__ | $228,480.00 | ☐ ☑ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(1) (Claimed: $0.00 100% of FMV) |
| Brief description: 3118 Thomas Paine Dr Legal description: Lexington Place Sec 1, Block 1, Lot 1 Line from *Schedule A/B*: __1.2__ | $179,560.00 | ☐ ☑ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) (Claimed: $9,335.49 100% of FMV) |

As reflected in a portion of Ms. Ayobami's Schedule C published above, she claimed as exempt 100% of FMV of her interest with a value of $9,335.49 in real estate located at 3118 Thomas Paine Dr. The total value of the property is $179,560.00, but her Schedule D reflects a lien on the property for $170,224.51. The value of Ms. Ayobami's interest in the property is within the limit offered by § 522(d)(5). It is Mr. Peake's position that Ms. Ayobami exempted a fixed $9,335.49 interest in the property, and that any appreciation in value of the property should remain in, or be returned to, the estate. (ECF No. 89 at 13) (responding to the Court's inquiry regarding the hypothetical exemption of a rare coin worth $5,000, Mr. Peake stated that "the $5,000 would leave [the estate], but any value over and above that, stays the property of the estate.").

In principle, Mr. Peake argues that any appreciation beyond the value of the exemption is non-exempt property, and therefore, property of the estate. (*Id.*).

*In re Gebhart* was the primary source authority used by the court in *Salazar* to conclude that the estate retains an interest in post-petition appreciation of an asset, even if a 100% of FMV interest with a value within the statutory limit in that asset was reclaimed by the debtor. *In re Salazar*, 449 B.R. at 901. *Gebhart* involved two chapter 7 cases consolidated for appeal. *In re Gebhart*, 621 F.3d 1206, 1209 (9th Cir. 2010). The relevant case—because it involved federal

exemptions—was filed by the Chappells. The Chappells exempted their equity in a homestead with a value as of the petition date of $21,511, well within the § 522(d)(1) limit. *Id.* After receiving a discharge, the holder of the Chappell's mortgage moved for relief from the stay in order to foreclose on the homestead because the Chappells had fallen into default. *Id.* In response, the trustee sought to sell the property, believing the value to have increased substantially since the petition was filed. The bankruptcy court held that the equity in the property had passed entirely out of the estate. *Id.* The trustee appealed and the bankruptcy appellate panel reversed, holding that postpetition appreciation in the homestead belonged to the estate. *Id.*

The Ninth Circuit, citing *Schwab*, held that the Chappells had only exempted a fixed monetary interest of $21,511 from the estate. *Id.* at 1210-11 ("Under [*Schwab*], an exemption claimed under a dollar-value exemption statute is limited to the value claimed at filing.").

This Court does not question the validity of this conclusion. If a debtor fails to indicate his interest in exempting 100% of FMV *or*[5] fails to assign a dollar-value to his interest, he is not entitled to retain the benefit of any postpetition appreciation. The Chappells failed to follow the *Schwab* instructions (admittedly, their case pre-dated *Schwab*); therefore, their legal position was no different from the debtors in *Orton* and *Schwab*.

The Court cannot find, either in the Code or in *Schwab*, any language that mandates that the debtor's exempt interest be a fixed dollar amount. The only mandate is that, as of the petition date, the value of the interest be within the relevant statutory limit. If a debtor employs *Schwab's* "100% of FMV" language, and assigns her interest a dollar-value as of the petition

---

[5] It is critical that a debtor both, (1) indicate his intent to exempt 100% of FMV, and (2) assign a dollar-value to the interest exempted. Part one of this procedure is necessary to comply with *Schwab* if the debtor wants to exempt 100% of the interest in an asset. Part two of this procedure ensures a trustee has sufficient notice of the value the debtor is claiming exempt as of the petition date so he is better positioned to object.

date, and the trustee either fails to object, or has his objection overruled, the debtor will have successfully reclaimed 100% of the interest in the asset from the estate.

The asset itself may not immediately leave the estate. Footnote 21 of *Schwab* makes clear that proposition is at least dubious. *Schwab* at 794 n. 21. However, in the Chapter 7 context, the footnote also makes clear that in most cases a Chapter 7 trustee will pass title in the asset to a debtor that has exempted a 100% interest in the asset. This is because, presumably, there would usually be no upside for the trustee in retaining bare title in the asset for the estate.[6]

The fundamental issue in dispute is whether post-petition appreciation of an asset, for which a debtor has exempted from the estate a 100% interest, is estate property. Mr. Peake argues that "any appreciation over [the exempted amount] . . . comes back into the estate . . . for the benefit of the creditors." (ECF No. 89 at 11). He further argues that if appreciation occurs, the debtor "ha[s] an absolute duty under [§] 1306 to contact [the trustee], it's no different than acquiring some other property." *Id.* at 10. It is certainly true that § 1306 reserves for the estate any property acquired by the debtor during the course of a Chapter 13 case. 11 U.S.C. § 1306(a). However, it is unclear that post-petition appreciation of an asset, all interest in which has been removed from the estate, constitutes after acquired property as contemplated by § 1306.

Section 541(a) dictates that "all legal or equitable interest of the debtor in property as of the commencement of the case" is property of the bankruptcy estate. Many courts relying on § 541(a)(6) have held that post-petition appreciation in estate property belongs to the estate. *In re Goins*, 539 B.R. 510, 516 (Bankr. E.D. Va. 2015); *In re Potter*, 228 B.R. 422, 424 (8th Cir.

---

[6] In Chapter 13, the principle is the same though the process is slightly different. Section 1306(b) states that "[e]xcept as provided in a confirmed plan or order confirming a plan, *the debtor* shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b) (emphasis added). In a Chapter 13 case, if there is no upside in retaining bare title to an asset for the estate, it is the debtor, as the debtor in possession of estate property, who may pass the remaining bare legal title in the asset to himself.

B.A.P. 1999); *In re Reed*, 940 F.2d 1317, 1323 (9th Cir. 1991). This result is prudent. After all, the estate has "all legal or equitable interest" in the debtor's property.[7] It follows then that the estate should benefit from any post-petition appreciation of that property.

But what of the debtor that exempts from the estate a 100% interest in the asset? Does it follow then that post-petition appreciation of the asset, of which the estate only holds bare legal title—and no beneficial title, should devolve to the estate? Certainly not. Post-petition appreciation must devolve to the holder of the interest.

## IV.    A path forward

The Court adopts a simple approach. While potentially burdensome with respect to case administration, this approach gives effect to the language of *Schwab* and its implications on 11 U.S.C § 522. Significantly, this approach is similar to the approach adopted by another Texas bankruptcy court. *See In re Moore*, 422 B.R. 865 (Bankr. N.D. Tex. 2010).

A debtor must to do two things to exempt a 100% interest in an asset from the estate. First, she must check the box in the third column of Schedule C that corresponds with the text "100% of fair market value, up to any applicable statutory limit." Second, she must assign a dollar value to her interest. Ms. Ayobami accomplished the second requirement by indicating the value of her interest in the assets in the fourth column of Schedule C.

The trustee may object to a debtor's claimed exemption. If the trustee lodges an objection, the court will hold an evidentiary hearing to determine the value of the claimed exemption of a 100% interest in the asset. Perhaps because the debtor's sworn schedules attest to the value of the interest, Fed. R. Bankr. P. 4003(c) imposes the burden of proof on the trustee

---

[7] While it is universally understood that the estate obtains legal title to the debtor's property under § 541, it is not obvious from the text of the Code that the estate obtains anything more than all interests, legal or equitable, in the debtor's property. *Compare Schwab*, 560 U.S. at 794 n.21, *with* 11 U.S.C. § 541(a)(1). Importantly, it is also the debtor's interest that is available for exemption under the limited-exemption statutes of § 522. Owning a 100% interest in an asset and owning the asset itself might be a distinction without a difference.

to challenge the debtor's value. If the objection is overruled, the debtor's interest will be removed from the estate, and the estate retains only bare title to the asset. Any postpetition appreciation of the asset will go to the debtor. If the objection is sustained, the debtor will be required to amend his exemptions to comply with § 522. *See In re Moore*, 442 B.R. at 868.

### A Caution

Mr. Peake, acting with his normal diligence, is concerned that estates could be deprived of undervalued assets. The Court recognizes the administrative burden on trustees that is created by the option given in *Schwab*, but an administrative burden imposed by statute may not be avoided merely because of its burdensome nature.

Nevertheless, in 2008, the Federal Rules of Bankruptcy Procedure were amended to add a provision dealing with fraudulently claimed exemptions. The general rule for the filing of an objection to exemptions requires objections to be filed within 30 days after the conclusion of the § 341(a) meeting of creditors. Fed. R. Bankr. P. 4003(a). The 2008 Amendments give the trustee *up to one year after the case is closed* if the debtor fraudulently claimed an exemption. Fed. R. Bankr. P. 4003(b)(2).

Of course, it is not fraudulent to hold an asset that increases in value. Conversely, it likely would be fraudulent to knowingly misrepresent the fair value of an asset in order to enable an interest in that asset to be claimed as exempt. The Rules adequately provide for the integrity of the bankruptcy exemption scheme.

16 / 17

**Conclusion**

The Court will issue an order consistent with this Supplemental Memorandum Opinion. Except to the extent of any conflict, the Court's March 1, 2016 Memorandum Opinion remains effective.

SIGNED **June 9, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT "B"



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
03/02/2016

| | | |
|---|---|---|
| IN RE: | § | |
| YEMISI AYOBAMI, | § | CASE NO: 15-35488 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

This Memorandum Opinion addresses the integration of the newly adopted Schedule C (Official Form 106C) with 11 U.S.C. § 522 and the Supreme Court's opinion in *Schwab v. Reilly,* 560 U.S. 770 (2010). On the specific facts of this case[1], the Court concludes that:

- With certain exceptions set forth below, Ms. Ayobami properly completed Schedule C in accordance with the requirements of Schedule C.

- For the incorrectly completed portions of Schedule C, Ms. Ayobami must amend her scheduled exemptions.

- When the Chapter 13 Trustee (or any other party-in-interest) cannot meaningfully analyze a properly completed Schedule C, discovery may be appropriate.

- If a debtor exempts 100% of the Current Value of an underlying asset, the underlying asset is no longer estate property. Increases in value are attributable to the debtor.

### Background

Ms. Ayobami filed his Chapter 13 bankruptcy petition on October 16, 2015. Along with her petition, she filed many of her schedules and statements. Of particular relevance here, Ms. Ayobami filed her Schedule of Real Property, her Schedule of Personal Property and her Schedule of Property Claimed as Exempt. On October 26, 2015, Ms. Ayobami filed her Schedule of Creditors Holding Secured Claims. All of these schedules were all filed on the appropriate official forms in effect on October 16, 2015.

---

[1] In particular, Ms. Ayobami elected federal exemptions. The Court has not addressed whether a similar result would be dictated for a debtor electing Texas exemptions.

On December 1, 2015, new official forms for use in chapter 13 bankruptcy cases became effective.  These new official forms were the product of years of diligent work by the Advisory Committee on Bankruptcy Rules and the Committee on Rules and Procedures.

On December 9, 2015, the Chapter 13 Trustee objected to one item claimed as exempt by Ms. Ayobami.  The Trustee alleged that one tract of real property, claimed as exempt under 11 U.S.C. § 522(d)(1), was not Ms. Ayobami's residence.

On December 11, 2015, Ms. Ayobami filed certain amended schedules.  The amended schedules included Ms. Ayobami's schedule of Property and an amended schedule of her claimed exemptions.  Ms. Ayobami properly utilized the new official forms, including the use of Official Form 106C, to claim her exemptions.  On December 29, 2015, also utilizing the new official form, Ms. Ayobami filed an amended schedule of secured claims.

On January 12, 2016, David Peake, the Chapter 13 Trustee, diligently objected to the claimed exemptions.  Although Mr. Peake's complaint focused on whether Ms. Ayobami properly completed the new Official Form 106C, the gravamen of the objection was that the Chapter 13 Trustee could not discern what interests in property were actually claimed as exempt.

On January 13, 2016, the Court conducted a hearing on this matter.  At the hearing, the Court considered the excellent arguments made both by Ms. Ayobami's counsel and Mr. Peake's counsel.  Each client was well represented and presented the Court with difficult issues.  At this stage, it is premature to determine whether the claimed exemptions are proper.

### Schwab v. Reilly

The new official forms that became effective on December 1, 2015 were adopted in the wake of the Supreme Court's landmark decision in *Schwab v. Reilly*. 560 U.S. 770 (2010).  In *Schwab,* the Court was confronted with the issue of whether Nadejda Reilly had exempted 100%

of certain cooking equipment that had been given to Ms. Reilly by her parents.  Because the present case turns on the Supreme Court's ruling in *Schwab*, this Court will provide a lengthy explanation of that opinion.

Ms. Reilly elected federal exemptions and claimed certain cookware equipment as exempt under 11 U.S.C. § 522(d)(6) and § 522(d)(5).  She claimed that the value of the equipment was $10,718.00.  She exempted a $1,850.00 interest as exempt under § 522(d)(6) and she claimed an $8,868.00 interest as exempt under § 522 (d)(5).  At the time, the statutory limit for a § 522(d)(6) exemption was $1,850.00 and the statutory limit under § 522(d)(5) was $10,225.00.  *Schwab*, 560 U.S. at 775.  Accordingly, Ms. Reilly's claimed exemptions were within the statutory limits.

Ms. Reilly listed the value of the cookware equipment at $10,718.00.  Accordingly, the amount that she claimed as exempt equaled the amount that she alleged to be the value of the property.

Trustee Schwab did not object to the claimed exemption.  The issue before the Supreme Court was whether the claimed $10,718.00 in exemptions, combined with the listed value in the same amount, meant that the cookware equipment had entirely left the estate.  The Supreme Court held that the mere fact that the claimed exemption matched the alleged value was insufficient to remove the property from the Estate.  Instead, the Court held that the $10,718.00 in value represented Ms. Reilly's exempt interest in the cookware and that any excess would be preserved for the Estate.

Nevertheless, the Court provided extensive instructions on how a debtor could potentially exempt the entirety of an asset.  To exempt the entirety of an asset, a debtor was required to "declare the value of her claimed exemption in a manner that makes the scope of the exemption

clear, for example, by listing the exempt value as 'full fair market value (FMV)' or '100% of FMV.'" *Id.* at 793.

The Court continued by explaining that a debtor who did unambiguously declare a claimed exemption of 100% of the fair market value would force action by the Trustee:

> Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits.

*Id.*

The principal issue raised by the Trustee is whether Ms. Ayobami's claimed exemptions have been stated in a manner to allow the Trustee to perform his statutory duties. This, in turn, raises the issue of the rights of the Estate in the interests that are claimed exempt by Ms. Ayobami. The principal economic issue is whether errors or increases in Current Value estimates will devolve to the interests of the Debtor or the Trustee. This Court concludes:

- If a debtor claims an interest in an asset that is measured in dollar value (as did Ms. Reilly in *Schwab*), any increase in value goes to the Estate.

- If a debtor claims an interest that is measured in a percentage ownership of an asset (as Ms. Ayobami did in this case by claiming a 100% interest), any increase in value goes to the debtor.

The foregoing conclusion is inescapably driven by the text of the statute and by *Schwab*.

11 U.S.C. § 522(b)(1) provides that "an individual debtor may exempt from property of the estate . . . " property that is properly claimed as exempt. Put simply, if it is exempted, the property is no longer in the estate, it is "exempt[ed] from property of the estate." Once exempted from the estate, "property exempted under this section is not liable during or after the case for any debt of the debtor that arose" prepetition. 11 U.S.C. § 522(c). This concept is extended to administrative claims by § 522(k). This fundamental principle was recently implemented by the Supreme Court when it held that exempted property could not even be applied to satisfy

administrative claims against the estate that were occasioned by the Debtor's fraud.  *Law v. Siegel*, 134 S. Ct. 1188, 1192 (2014) ("The Code authorizes the debtor to "exempt," however, certain kinds of property from the estate, enabling him to retain those assets post-bankruptcy.")

The legal principle that exempt property is no longer estate property was explicitly stated in *Schwab:*

> As we emphasized in *Rousey*, "[t]o help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain *interests in property*, such as his car or home, *up to certain values*." 544 U.S., at 325, 125 S.Ct. 1561 (emphasis added). The Code limits exemptions in this fashion because every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to his creditors.

*Schwab*, 560 U.S. at 791.

This concept was exhaustively analyzed in *Schwab*.  Importantly, the concept was the fundamental issue presented in *Schwab*.  The holding in *Schwab* was that the debtor had failed to implement her exemption of 100% of the asset; instead, she exempted a dollar value from the estate.  However, the Court gave explicit instructions on how Ms. Reilly should have filed her exemptions in order to permanently retain them:

> Where, as here, it is important to the debtor to exempt the full market value of the asset or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, by listing the exempt value as "full fair market value (FMV)" or "100% of FMV."

*Schwab*, 560 U.S. at 792-93.

The Court continued and explained what should occur if a debtor claims 100% of the full fair market value:

> If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption.

*Schwab*, 560 U.S. at 793.

Because exempted interests leave the estate, the issue that must be analyzed by the Trustee is the current—not the future—value of the asset.   The Trustee wishes to limit the debtor such that the debtor never can receive more than the dollar limit set forth in § 522.   It is understandable that the Trustee would want such a result.   It would be highly beneficial to the estate, and it would mean that the Trustee would not have to be as concerned with the valuation of property.   Under the Trustee's position, many valuation errors could be corrected by simply waiting until assets were sold and the Trustee would receive (as did the trustee in *Schwab*) the excess proceeds.

However, Congress has chosen a different path—one that benefits the debtor rather than the estate.   This path presents difficulties for trustee administration, but those difficulties cannot alter the law.

### Application of Official Form 106C

An individual filing bankruptcy in Texas may elect either Texas state exemptions or federal exemptions.   In this case, Ms. Ayobami elected federal exemptions.   Although Texas law provides for the exemption of *assets*, most federal exemptions are only of all or a part of a debtor's *interest in* the assets.    In *Schwab*, the Court clarified that a debtor's interest in an asset—unless explicitly claimed as 100% of the asset—may not encompass the full value of the

asset.  However, as set forth above, the Supreme Court specifically authorized a debtor to claim as exempt 100% of the fair market value of an asset.

In *Schwab*, the Court noted that the purpose of valuations on a Schedule C is not to bind the parties to the listed value.  Rather, "[w]e simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien." *Schwab*, 560 U.S. at 785.

The exemption of the whole of the asset, rather than merely an interest in the asset, requires diligent disclosure, and diligent conduct by a trustee.  "The decision reached here encourages a debtor wishing to exempt an asset's full market value or the asset itself to declare the value of the claimed exemption in a way that makes its scope clear. Such declarations will encourage the trustee to object promptly and preserve for the estate any value in the asset beyond relevant statutory limits." *Schwab*, 560 U.S. at 773.

Official Form 106C, as utilized in this case, does not always accomplish the clarity required by *Schwab*.  Nevertheless, the problem is in the disclosure and not in the election to exempt 100% of the fair market value of the assets.

When she completed her Official Form 106, Ms. Ayobami listed assets and their current value[2].  Although there are a few mathematical errors as set forth below, most of the exemption claims are clear.  A few items are combined for valuation purposes, which is impermissible if the

---

[2] The Court understands that the term "Current Value" may, in isolation, be ambiguous with respect to whether "Current Value" equates to "Fair Market Value."  However, the Official Instructions to the newly adopted forms contain the following instruction: "**In this form, report the current value of the property that you own in each category.  Current value is sometimes called fair market value and, for this form, is the fair market value as of the date of the filing of the petition.  Current value is how much the property is worth, which may be more or less than when you purchased the property.**"  The Court finds that this instruction resolves any ambiguity.  A debtor's schedules represent the debtor's sworn statement as to the fair market value of property.

combination exceeds the $575.00 per item limitation. As required by Official Form 106, Ms. Ayobami listed the full Current Value of her property, without deducting the amount of liens from her value estimate. This requires any person reviewing the claimed exemptions to compare the Current Value to the amount of debt secured by the asset. It is only the net value (after deduction of claims secured by the asset) that is exempted. *Owen v. Owen*, 500 U.S. 305, 308 (1991). In a consumer case, the burden of comparing the Current Value of the claimed exemption with the debt secured by that property would ordinarily not be substantial, since most consumers have only a handful of creditors holding secured claims.

The Court will evaluate the claimed exemptions under each of the subsections of § 522.

Under § 522(d)(1), Ms. Ayobami claimed one exemption. She utilized the 100% of fair market value exemption on her real property located at Section 10, Block 1 of Riverpark West. She lists the Current Value of that property at $228,480.00. The exemption that may be claimed under § 522(d)(1) is limited to $22,975.00. However, as set forth above, to determine the Current Value that may be subject to an exemption, the Court must examine the debts secured by the property. Ms. Ayobami's schedule D lists the debt on this property as $2,288.00 owed to Riverpark West HOA and $284,513.14 owed to Caliber Home Loans, Inc. Accordingly, Ms. Ayobami is claiming her bare ownership interest in the home—an interest with no Current Value available to the Estate—as exempt. Even though the property may have no Current Value in excess of the liens against it, Ms. Ayobami may exempt her "bare legal title." *Owen*, 500 U.S. at 308. The Trustee is seeking an order that would give the Trustee the "upside" in any appreciation of the value that produces net sales proceeds above the $22,975.00. By utilizing the 100% value exemption, Ms. Ayobami seeks the same "upside" to be retained by her.

The Trustee is free to challenge Ms. Ayobami's assertion of the Current Value of the Riverpark property. If he fails to do so, then the entirety of the Riverpark property will be exempted from the Estate. The Court gives the Trustee 21 days from entry of this Order to challenge the valuation.

Under § 522(d)(2), Ms. Ayobami exempted her interest in her non-filing spouse's 1999 Nissan Pathfinder. Apparently claiming that the vehicle is not property of the estate, she lists the Nissan's Current Value at $0.00. A debtor may only exempt Estate property (Section 522 provides that "an individual may exempt from property of the estate…"). "No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate." *Owen*, 500 U.S. at 308.

Accordingly, a debtor may not exempt 100% of fair market value of the vehicle because it is not estate property. The present motion is to require the Debtor to amend her exemption claim without utilizing the "100% of fair market value" option. With respect to the claimed exemption of the Nissan, the Trustee has adequate information to file an objection without the necessity of any change in the schedules that were filed. The Court gives the Trustee 21 days from entry of this Order to challenge the claimed exemption.

Under § 522(d)(3), a debtor may exempt up to $575.00 in value in individual items. The aggregate of all § 522(d)(3) exemptions may not exceed $12,250.00. Ms. Ayobami claimed as exempt "100% of the fair market value, up to any applicable statutory limit" the following property as exempt under 11 U.S.C. § 522(d)(3):

| Description | Alleged Current Value |
|---|---|
| Television | $750.00 |
| Couch | $900.00 |
| Two refrigerators | $680.00 |
| Stove and microwave | $950.00 |

| Description | Alleged Current Value |
|---|---|
| Lawn mower | $85.00 |
| Tools | $175.00 |
| Bed | $800.00 |
| Dresser | $100.00 |
| Nightstand | $95.00 |
| Bed | $250.00 |
| Dresser | $150.00 |
| Bed | $250.00 |
| Dresser | $150.00 |
| Bed | $250.00 |
| Dresser | $100.00 |
| Suits and shirts | $1,670.00 |
| | |
| Total | $7,355.00 |

The $7,355.00 is less than the allowed aggregate value of $12,250.00 that may be exempted under § 522(d)(3). However, certain of the individual items exceed the $575.00 per item value that may be exempted. These items include the $750.00 television, the $900.00 couch, and the $800.00 bed. The exemption claimed for the refrigerators must be restated as the two refrigerators are aggregated and the Court and Trustee cannot determine whether one of the refrigerators exceeds the $575.00 per item cap. The same is true for the stove and microwave (the debtor has stated that the stove is valued at $400.00 and the microwave at $150.00, but that the total value of the two is $950.00) and for the suits and shirts (listed with individual values totaling $450.00 but with an aggregate value of $1,670.00).

Accordingly, the Court orders that the § 522(d)(3) claimed exemptions be amended to eliminate the aggregation of any claimed exemptions for multiple items if the aggregation results in an aggregate Current Value exceeding $575.00.

The Court notes that on certain items Ms. Ayobami claims a 100% of Fair Market Value exemption under multiple sections of the Code. For example, on her television, she claims 100%

of the Fair Market Value under both § 522(d)(3) and under § 522(d)(5). The Court evaluates these separately, and Ms. Ayobami's schedules must reflect the limits in the Code. Accordingly, although she must amend her § 522(d)(3) exemption claim, she may be able to capture additional exempt value under § 522(d)(5). That will be evaluated below. Or, Ms. Ayobami may wish to claim 100% of the TV's Fair Market Value under § 522(d)(5). The choice is hers, but she may not overlap two 100% exemptions such that they may not be meaningfully evaluated[3].

The claimed exemptions of the $750.00 television, the $900.00 couch and the $800.00 bed are limited to $575.00 per item. The Trustee's objection to the use of the 100% of Fair Market Value option is sustained. Ms. Ayobami is ordered to amend her claimed exemptions to eliminate the claim that she may exempt 100% of the Fair Market Value of any individual asset with a value exceeding $575.00. This excess value must be made available to pay the holders of unsecured claims under the "best interest test" contained in 11 U.S.C. § 1325(a)(4).

With respect to the balance of the § 522(d)(3) property, the Trustee is entitled to object to the valuation of the property. He may engage in formal or informal discovery if the information is inadequate. However, no further amendments by the Debtor are required. Ms. Ayobami has properly claimed the exemption. The Court gives the Trustee 30 days from entry of this Order to challenge the valuations of this property.[4]

---

[3] For example, Ms. Ayobami may exempt $575.00 in value of the $750.00 television as exempt under § 522(d)(3). She may then exempt 100% of the balance of the value of the television under § 522(d)(5) if she has available value under § 522(d)(5). In that instance, if no party-in-interest objects, she would have used $175.00 of her available § 522(d)(5) value, but exempted 100% of the television.

[4] The Court has no concern that this requirement will impose undue hardship on the Trustee or on debtors. Time and again, the Trustee has proven his diligence and good judgment. Debtor's counsel in this case and throughout the District have demonstrated their full-throated defense of their clients. The adversarial process established by Congress is alive and well in this District. In a routine case, the Trustee is likely to request photographs of assets to assist in his valuation. Most debtors with assets that may prove valuable also have ready access to smart phones with high quality cameras. The Court is confident that debtors, informed by highly capable counsel, will readily cooperate with the Trustee. If not, the Trustee may engage in compelled discovery. Fed. R. Bankr. P. 2004. If photographs prove inadequate to allow the Trustee to evaluate valuations, he has a panoply of available discovery tools at his disposal. Indeed, non-cooperation with the Trustee in the performance of his duties may raise questions

Under § 522(d)(5), a debtor may exempt up to $1,225.00 in aggregate exemptions. Additionally, the Debtor may increase this aggregate by the amount by which the debtor's § 522(d)(1) exemptions are less than $11,500.00. Because Ms. If Ms. Ayobami's allegation that her § 522(d)(1) exemptions are worth $0.00 (net of secured debt), she may claim up to $12,725.00 in § 522(d)(5) exemptions. Ms. Ayobami claimed as exempt "100% of the fair market value, up to any applicable statutory limit" the following property as exempt under 11 U.S.C. § 522(d)(5):

| Description | Alleged Current Value | Alleged Secured Debt | Alleged Value of Claimed Exemption |
|---|---|---|---|
| Real property at Lexington Place Sec 1, Block 1 | $179,560.00 | $158,724.00 | $20,836.00 |
| 2011 Chevrolet Tahoe | $19,000.00 | $20,162.00 | $0.00 |
| TV | $750.00 | $0.00 | $750.00 |
| Couch | $900.00 | $0.00 | $900.00 |
| Refrigerator | $680.00 | $0.00 | $680.00 |
| Bed | $800.00 | $0.00 | $800.00 |
| | | | |
| Total | | | $23,966.00 |

Accordingly, Ms. Ayobami has attempted to claim § 522(d)(5) exemptions on $23,966.00 of interests in property when her maximum allowed exemption is $12,275.00[5]. That is

---

as to whether the debtor's chapter 13 plan has been proposed in good faith. 11 U.S.C. § 1325(a)(3). Because the duty of cooperation is statutory ("The debtor shall . . . cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3)), the debtor's cooperation could also be compelled by the Court without the need for resort to formal discovery.

[5] It is important to note that valuation is concluded at the time that the exemptions are allowed. A debtor may not exempt an asset if its Current Value exceeds the statutory exemption limit. Nevertheless, if there is a valuation error, a debtor could potentially gain a windfall. For example, Ms. Ayobami valued her Chevrolet Tahoe at

impermissible.  The Trustee's objection is sustained.  It is not possible to determine whether Ms. Ayobami wishes to claim a $12,275.00 interest in the real property, and to waive the balance of her exemption claim under § 522(d)(5), or to utilize a different mix of assets.  What is apparent is that the current claimed exemptions exceed her own estimate of the Current Value.  Accordingly, Ms. Ayobami must amend her claimed exemptions under § 522(d)(5) to conform to the statutory maximum.

### Two Clarifications from Oral Argument

Two matters arose at oral argument reflecting the confusion raised by the transition to the new Official Form 106C.

First, Ms. Ayobami's counsel misinterprets the phrase "100% of fair market value, up to any applicable statutory limit" to mean that the selection of that option on Form 106C creates a floating exemption that is "capped" by the statutory limit.  That is not correct.  Once 100% of the property is exempted, it is withdrawn from the estate.  After withdrawal from the estate, there is no longer a ceiling on the value of the asset.  Instead, the language "up to any applicable statutory limit" means that a debtor may claim 100% of the fair market value *only if* the fair market value at the time that the exemptions are allowed is less than the applicable statutory limit.  Value estimates may be incorrect, but they will nevertheless bind the outcome.

Second, the Trustee's counsel lamented the need to continue to monitor each asset sale during the five-year bankruptcy case so as to adjust the allowed exemptions in the remaining assets.  That concern is not well-founded.  If the debtor has exempted as asset, the asset is removed from the estate.  The risk on an estimation error rests on all parties.  If the valuation overstates the value of the asset, the debtor will receive less and may not redo the exemptions at

---

$19,000.00 and exempted 100% of the Tahoe.  If the Tahoe is ultimately sold for $25,000.00, Ms. Ayobami would be entitled to retain the amount of the sales proceeds that exceed the debt secured by the Tahoe.

a later date based on the valuation error.  If the valuation understates the value of the asset, the debtor will receive an amount that exceeds the valuation, and may receive more than the statutory limit.

The statutory limit in a 100% of fair market value scenario is not a limit on distributions that may be received years in the future.  Rather, it is a limit on whether 100% of the fair market value of an asset may be exempted at all.

### Conclusion

Ms. Ayobami may not claim exemptions that exceed the statutory maximum fair market value of the allowed exemptions under § 522.  Her schedules must clearly claim an exemption, and the claim must be consistent with the statute.

Although the Trustee will be required to assert his objections in a timely manner, he will not be required to guess at what Ms. Ayobami wants to do.  That is precisely what occurred in *Schwab,* and the debtor in that case was not allowed to benefit from her own ambiguity.

The Court orders Ms. Ayobami to amend her schedules in a manner consistent with this Memorandum Opinion with respect to her § 522(d)(3) and § 522(d)(5) exemptions.  The amendments must be filed within 21 days of entry of this Memorandum Opinion. The Trustee and other parties in interest may object within 30 days of the filing of the amendments.

With respect to the § 522(d)(1) and § 522 (d)(2)exemptions, the Trustee has 21 days from entry of this Memorandum Opinion to object.

SIGNED **March 1, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT "C"



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
06/09/2016

| | | |
|---|---|---|
| IN RE: | § | |
| YEMISI AYOBAMI, | § | CASE NO: 15-35488 |
| Debtor | § | |
| | § | CHAPTER 13 |

## ORDER ON MOTION FOR CLARIFICATION

1.     The Court has issued a Supplemental Memorandum Opinion on this date.

2.     Mr. Peake is granted leave to amend his objections to Ms. Ayobami's claimed exemptions in order to comply with the Court's Memorandum Opinions.

3.     The deadline for the filing of amended objections is July 9, 2016.  If no amended objection is filed, the exemptions are allowed.

SIGNED **June 9, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

1 / 1